[No. 22942. Department One. April 6, 1931.]

THE STATE OF WASHINGTON, *Respondent*, v. E. O. SHAFER, *Appellant*.[1]

[1]Reported in 297 Pac. 176.

*C. T. McDonald,* for appellant.

*W. L. LaFollette, Jr.,* and *S. R. Clegg,* for respondent.

MAIN, J. — The defendant by information was charged with the crime of grand larceny, in that he obtained from the Central Auto Company, of Colfax, Washington, an Oldsmobile sedan, by representing that he was the owner of a Nash roadster which he traded in as a part payment for the Oldsmobile, when in fact he was not the owner of the Nash, and had no right to sell or dispose of the same. At the conclusion of the state's evidence, the defendant moved for a directed verdict, which motion was denied. At the conclusion of all of the evidence, the cause was submitted to the jury, and a verdict of guilty was returned. The defendant interposed a motion for a new trial, which was overruled, and judgment and sentence was entered, from which he appeals.

The Central Auto Company is a corporation engaged in the business of selling automobiles, having its principal place of business in Colfax. Roy Meyers was engaged in the city of Spokane in the business of buying and selling used automobiles. The appellant, E. O. Shafer, operated a garage at Oakesdale, in Whitman county. Leslie Ellis resided at or near Oakesdale, and was the owner of a Dodge automobile.

On or about September 24, 1929, Ellis accompanied the appellant to Spokane, and while there the Dodge automobile was traded to Meyers as part payment upon a Nash roadster owned by Meyers. The Nash was delivered to Ellis under a conditional sales contract, the purchase price being five hundred dollars, of which fifty dollars was paid in cash, the Dodge automobile being taken in at a value of one hundred dol-

lars. The contract provided for further monthly payments until the full sum should be paid.

The Dodge was delivered to the appellant as a commission upon the sale.

Subsequently, Ellis made a small payment on the contract, but was unable to meet the payments as they became due. There was some talk about his surrendering the car, but this was not done. The car was placed in the garage owned by appellant, to be there retained until such time as Ellis could continue with his contract. While the Nash was in this situation, the appellant traded it, at a value of four hundred dollars, to the Central Auto Company, as part payment on an Oldsmobile sedan, and gave therefor a bill of sale, in which he recited that he was the ''lawful owner'' of the Nash. Subsequently, as above indicated, the appellant was charged with obtaining possession of the Oldsmobile by falsely representing that he was the owner of the Nash.

The appellant's defense was that he had purchased the Nash from Meyers, and was the owner thereof at the time he transferred it to the Central Auto Company.

█ It is first contended that the court erred in giving instruction number three. No exception was taken to this or any other instruction, and the question is therefore not here for review. According to rule VI of this court, not only must exceptions be taken to instructions, but it is necessary that the specific objection to the instruction be pointed out in order that the trial court may have an opportunity to correct the error, if there be one.

█ It is next contended that the court should have withdrawn the case from the jury. In this connection, it is first said that there is no evidence that the false representations with reference to the Nash were made

in Whitman county, where the trial occurred, and where the Central Auto Company was doing business. The appellant, according to the testimony offered by the state, in that county traded the car as owner, and, as above pointed out, covenanted in a bill of sale that he was the owner thereof. This was sufficient evidence to take the case to the jury on the question.

It is further said that the case should be withdrawn from the jury because the appellant, as agent of Meyers, was authorized to sell and transfer automobiles. It is unnecessary to inquire what the scope of the appellant's agency was, because the state's evidence, without contradiction, shows that, at the time the Nash was transferred, the title thereof was in Meyers; that Ellis had a conditional sales contract to purchase the same, which had not been forfeited; and that the car was being held in appellant's garage until Ellis could arrange to meet the delinquent payments.

As already indicated, the appellant in his defense did not claim that he had a right to transfer the car as agent, but rested his defense on the ground that he had purchased it from the owner on the morning of the day upon which it was transferred. In his direct examination, he testified in part as follows:

"I think that was the morning of the sixth, drove up to Roy Meyers', got to his place a little after eight in the morning. I said, 'Will you take my note for that Nash for four hundred, I want to trade it on an Oldsmobile sedan for a demonstrator?' He said, 'Certainly.' Went back to his office, began filling out one of his blanks; read it. Promissory note. Signed it, same as I do in the banks. Delivered the Nash to him —had the Nash at his place. Took my car to the Model Garage; got this Nash car, drove it to— Q. Oakesdale? A. Oakesdale.''

On cross-examination he further testified:

"Q. You say you took this Nash car back to Spokane to Roy Meyers? A. Yes sir. Q. What date? A. I

should say about the first. Q. First of what? A. November. Q. You went back on the sixth and got it? A. Yes sir. Q. What kind of note did you sign? A. Promissory note.''

In rebuttal, this testimony was contradicted by Meyers.

The trial court properly declined to withdraw the case from the jury upon either of the grounds. The questions presented were of fact, and not of law.

■ It is next contended that the motion for new trial should have been granted on the ground of newly discovered evidence. In support of the motion, a number of affidavits were presented, all of which are brought here in the clerk's transcript and not in the statement of facts. This court has many times 'held that affidavits used upon a motion in the trial court, in order to be considered upon appeal, must be brought here either by statement of facts or bill of exceptions.

The judgment will be affirmed.

TOLMAN, C. J., MITCHELL, HOLCOMB, and PARKER, JJ., concur.